## SCHMEYER'S APPEAL.

An executor forfeited his commission by holding and using a sum of money which the will directed to be invested, even though he paid interest for it.

Where a man devised moneys received from sales, or by other means, and all the remaining moneys to the daughters, they are entitled after the death of the widow to the amount which had been devised to her for life.

Appeal from the Orphans' Court of Lehigh County. No. 83 July Term, 1880.

The following is a translation of all except the formal parts of the will of Joshua Schmeyer:

1st. It is my will and I hereby ordain that as soon as possible after my death my just debts and funeral expenses shall be paid, and that my executors shall make and erect after our death beautiful and suitable tombstones for myself and my beloved wife Diana.

2nd. I give and devise unto my beloved wife Diana, for and during her natural life for her own use, my house and three acres of land and the buildings which we at present occupy.

But after her death, the said residence with the three acres of land shall be sold at public sale, and the proceeds thereof shall be divided into five equal shares amongst my five daughters, Anna, Rebecca, Helena, Caroline and Ruth.

Further, my said wife shall have the right to have for her own use as much of our household furniture as she desires to have. But the rest of the household furniture shall be sold at, public sale, as well as all the other of my remaining articles which were not reserved for my said wife in this will.

. At the same time she shall have the right to have two of my cows, whichever she may elect, as well as two hogs and all the chickens upon the premises.

My wife shall also receive from both my sons, Benjamin and Jonas Schmeyer, the (*ausbehalt*) as it is reserved in the agreement between them and myself. In addition to such "*ausbehalt*" my executors shall also of the first moneys that comes into their hands, put at interest the sum of fifteen hundred dollars for my wife; thereof she shall receive the yearly interest which my executors shall take every year to her house.

But should it happen that in the first year after my death the said interest had not yet become receivable or. due, then my executors give her ninety dollars of my other moneys.

3rd. After the death of my wife all my household furniture and whatever remains of my goods shall be sold at public sale and the proceeds thereof shall be divided into five equal shares among my before named five daughters.

4th. I give and devise to my daughter, Helena Levan, her heirs and assigns, the house and land, together with the buildings which she at present has in possession. Said land she shall receive on account of her inheritance to the value of the sum of fourteen hundred dollars.

5th. I hereby ordain that the land which I purchased from the administrators of Solomon Fogel, as well as that which. I have purchased from Tilghman Miller, shall be sold as soon as possible after my death, at public sale, and the proceeds, thereof shall be divided into five equal shares among my said five daughters.

6th. My executors shall of the moneys which they have received in hand, either through the above mentioned public sale or by other means, first pay to those of my daughters who have received the least at the time of my death. But those who at said time shall have received the most, shall not receive their money until they are all equal.

But as soon as my said five daughters or their heirs are all equal, then all the remaining moneys shall be divided into five equal shares among my said five daughters or their heirs. And so also the amounts of the yet remaining bonds (as they become due) which I have received from both of my sons, Benjamin and Jonas Schmeyer, for the real estate which I have this day sold and by deed conveyed to them.

7th. I also hereby empower my hereinafter named executors that they shall deliver to the purchasers of the real estate suffi-- cient deeds of conveyance.

And lastly, I hereby appoint both my sons, Benjamin and Jonas Schmeyer, executors of this, my last will and testament, while I declare all my former made wills and testaments null and void, and this present and no other my last will and testament.

---

After the death of the widow of Joshua Schmeyer his executors filed an account in which the moneys received consisted of the $1,500 bequeathed to the widow, and interest thereon. The opinion of the Court upon exceptions to the auditor's report was as follows, per

Albright, P. J.:

The assertion in the seventh exception that the $1,500, the interest whereof the testator gave to his widow for life, was distributed, or the right thereto adjudicated by the first auditor's report confirmed November 8th, 1872, is not sus-- tained. On the credit side of the account, as stated by the auditor, the following is found: "Amount in accountants' hands, $4,983.79, from which deduct the sum of $1,500, amount ordered to be invested as per will of Joshua Schmeyer, deceased; amount for distribution as per will, $3,483.79." The latter sum was then distributed among testator's five

daughters, the advancements to them having been ascertained. These daughters were made equal in that distribution, reference being had to the amounts they had been advanced respectively as directed in the will. The auditor might in that report have distributed the $1,500, payable at the decease of the widow, but he did not see fit to do so.

The testator after making certain other provisions for his widow, declares: "In addition  *  *  *  my executors shall also of the first moneys that shall come into their hands put at interest the sum of $1,500 for my wife; thereof she shall receive the yearly interest, which my executors shall take every year to her house."

The executors did not "put at interest" said sum of $1,500, but they kept it in their own hands. Benj. J. Schmeyer, one of the executors, on July 1st, 1872, made his promissory note payable in one year to himself and Jonas Schmeyer, executors of Joshua Schmeyer, deceased, for said sum of $1,500, with interest. In this condition that matter has remained up to this time. That note, with payments of interest thereon endorsed, was produced at the argument of the exceptions. The widow died September 27th, 1878. The executor filed a final account to January Term, 1880. There is nothing brought into said account except said sum of $1,500 and interest thereon.

That fund is a portion of the estate of Joshua Schmeyer, deceased, and as such it must be accounted for and distributed in obedience to the will.

The accountants have charged themselves with interest on the $1,500, amounting to $262.31. It is not stated from or to what date it is calculated. An endorsement on the note of interest paid June 20th, 1877, is questioned by exceptants. They allege that it was not paid in fact.

In the account credit is taken for various sums, including, as the auditor says, "debts of widow, funeral expenses, medical attendance, attorney's fees, tombstone, etc., as itemized in final account and adjusted in this report, $510.07." The sum of $69.37, included in said aggregate, is for accountants' com-

missions. All this is excepted to, and it is plain that as to all or nearly all the exceptions must be sustained.

In the first auditor's report it is said, "On this sum of $1,500 I have allowed them one and one-quarter per centum as commission." And the executors instead of putting said sum at interest as commanded by the will, retained it in their own hands, thus subjecting this trust fund to the danger of being lost, in case financial reverses should befall the accountants.

If they had not already received commissions on this sum they would be entitled to nothing now as against the legatees under the circumstances.

The Act of March 17, 1864, P. L. 53, provides that where the same person shall under a will fulfill the duties of executor and trustee, it shall not be lawful to receive or charge more than one commission upon any sum passing through his hands or held by him for the benefit of other parties, *provided*, that such trustee shall be allowed to retain a reasonable commission on the interest he may receive from any sum held by him in trust as aforesaid.

The executors agreed that one of them should keep and use this fund for his own purpose, instead of investing it as directed by the will. For this kind of management of an estate the law does not compensate the trustee; Stearly's Appeal, 2 Wr., 525 ; Smith's Appeal, 11 Wr., 424 ; Stehmann's Appeal, 5 Barr, 413 ; Witman & Geisinger's Appeal, 4 Cas., 376 ; Sharpe's Estate, 2 Phila., 280 ; Sauter's Estate., 6 W. N., 95 ; Leow's Estate, 6 W. N. 333.

The exception to the allowance of commissions is sustained.

It appears that in the $510.07 credits allowed is included an item of $67.50 for a tombstone—for the widow, no doubt. The testator makes provision for the furnishing of a tombstone for himself and wife out of his estate; therefore that item was correctly credited. Credit is claimed for $6 paid the register for filing the account, and $10 paid to counsel as a retainer. These items are allowed. It was necessary to file an account, or at least not improper to do so, after the auditor failed to distribute the $1,500 in the first report. Although the $30 additional fees paid by accountants to counsel no doubt was

for contesting the claim of the executors to share in the distribution of this fund against their sisters, who claimed that the will gave all to them, the services rendered by counsel no doubt were worth this sum, and the sons were at liberty to test this question, but inasmuch as it was litigation for their own personal benefit, they and not their sisters should pay for it. See Pusey vs. Clemson, 9 S. & R., 204.

A considerable portion of the credits seem to be for expenses of the widow's funeral; the other items are for her debts. This fund, as already remarked, is a portion of the estate of Joshua Schmeyer, deceased. It could not be applied for the benefit of any one else. The accountants must be charged with the $1,500 and interest thereon from the time of the widow's decease (September 27th, 1878) to the filing of the account, (December 18th, 1879) amounting to $1,610.50. After deducting the credits allowed, $67.50 plus $10 plus $6, and the expenses of the audit, $36.50—total $120—the sum of $1,490.50 remains for distribution. The exception to the allowance out of the estate of the costs of audit is not sustained. It was necessary to refer the account to an auditor to make distribution, and the expense of this reference should be borne by the estate. That is the account and audit were necessary if it is conceded that there was a substantial doubt concerning the right to the $1,500. Considering the result of the contest before the auditor and in Court, I am justified in saying that there was a doubt about the construction to be given to the will.

Is this fund distributable to the five daughters, or do the sons share in the distribution? The auditor decided that the testator died intestate as to the $1,500, and gave it to the seven children. The testator had seven children, who were all living when the will was made, and are still living; to wit: two sons, Benjamin and Jonas (the executors) and five daughters, Anna, Rebecca, Helena, Caroline and Rosalinda (or Ruth). On the day when the will was made he conveyed a farm to each of his sons, and took bonds from them. He devises to his wife for life a house and three acres of land. After her decease this was to be sold and the proceeds divided amongst the five.

daughters. Next he gives to his wife as much of the household furniture as she should desire to have. The residue of. the household furniture was to be sold at public sale, as well as "the other of my remaining articles which were not reserved for my said wife in this will." Then he gives to his wife certain domestic animals, and provides that his wife shall receive from the two sons the reservation of articles (*ausbehalt*) mentioned in the agreement between the testator and his said sons. Then follows the provision that the wife shall have the interest during her lifetime of the $1,500 of the first moneys that shall come to the hands of the executors, and which they were to put at interest as already stated.

The next provision is as follows: "After the death of my wife all my household furniture and what remains of my goods shall be sold at public sale, and the proceeds thereof shall be divided into five equal shares among my before named five daughters." Next a house and lot is given to Helena, on account of her share, and it is valued at $1,400. Then the testator directs that two farms which he designates shall be sold at public sale by the executor and the proceeds thereof equally divided among the five daughters. Then occurs the following: "Sixth. My executors shall of the moneys which they have received in hand either through the above mentioned public sales as by other means, first pay to those of my daughters who have received the least at the time of my death. But those who at that time shall have received the most shall not receive their money until all are equal. But as soon as my said five daughters are equal then all the remaining moneys shall be divided into five equal shares among my said five daughters or their heirs. And so also the amounts of the yet remaing bonds, as they become due, which I have received from both of my sons, Benjamin and Jonas Schmeyer, for the real estate which I have this day sold and by deeds conveyed to them."

The executors are empowered to make conveyance of the real estate sold.

In Hofius vs. Hofius, 92 Pa., 305, Justice Trunkey delivering the opinion of the Court, says: "The learned Judge of the

Common Pleas truly says: 'It should not be and never is presumed that a testator intended to die intestate of any portion of his estate if a contrary intention can be fairly deduced from the language of his will.' And he might have added, 'No presumption of an intent to die intestate as to any part of the estate is to be made when the words of the testator will carry the whole;' Raudenbuch's Appeal, 6 N., 51; Stehman vs. Stehman, 1 W., 466.

When the testator made his will he intended to dispose of all his estate. He provided for a division thereof amongst his seven children, after making provision for his wife.

He gave each of his sons a farm and took bonds maturing in the future. He speaks of the bonds "as they become due."

No doubt the portions of the sons were adjusted in the prices of the farms given to them and the terms of payment thereof. If such were not the case they would at best receive but one-seventh ot $1,500 each out of the large estate of the father. The plain words of the will and the adjudication upon the first auditor's report gives all the residue of the estate to the daughters; that was clearly not the intention. The sons were in favor with the father, for he appointed them executors, and they acted.

The will (and deeds to the sons) were made in 1859. Testator died in 1871. He had at that time made various advancements to his daughters and he expected to make and did make others to them prior to his decease. This appears from the statements of the advancements found in the first auditor's report. Those to Anna were made at six different periods running from 1858 to 1870 and amounted to $2,335.50; to Rebecca from 1847 to 1869 on eighteen occasions, and aggregated $2,203.21; to Helena on eight occasions from 1857 to 1867, in all $284.13, (the will gave her the house, which she had in possession in 1859, at $1,400, as part of her share, total of her advancement, $1,684.13;) to Caroline advancements were made at ten different times from 1857 to 1870, in all $1,730.50; and to Rosa from 1857 to 1869 on eleven occasions, in all $1,757.50.

The testator provided for the sale of all his real and personal estate. By virtue of the will all the estate of the testator

came into his executor's hands in the form of money, except the goods and interest money given to the widow. Nor is the will silent on the subject as to who is to receive it from the executors. "My executors shall of the moneys which they have received in hand either through the above mentioned public sale, *or by other means*," pay to the daughters so as to equalize them, having regard to the advancements made to them at the time of the testator's decease. And when said daughters were equal "*then all the remaining moneys* shall be divided into five equal shares among my said five daughters or their heirs. And so also the amounts of the yet remaining bonds (as they become due) which I have received from both of my sons."

The executors now contend that they are to share in the division of the $1,500 upon the theory that it was bequeathed by their father.

The will enjoins that the executors pay to the daughters moneys received from sales or *by other means*, and *all the remaining monies* are to be divided amongst the daughters.

Why should not this language be construed to include the $1,500. It is part of the testator's estate. It was to be "of the first moneys that comes into the executor's hands." It might have happened that the widow's demise would have followed that of the testator so shortly that this $1,500—"the first money in the executor's hands"—would have been required to equalize the daughters. Could the executors in that contingency have refused to apply it for that purpose ? Clearly not.

I cannot agree with the learned auditor in his conclusion in this reference. It does not require the presumption of law referred to by Justice Trunkey; the will in plain words gives the fund now in question to the five daughters.

---

Jonas Schmeyer, one of the executors, then appealed to the Supreme Court.

*Messrs. Butz and Schwartz*, for appellant, argued that objections not made before the auditor should not be allowed ; Kutz's Appeal, 40 Pa., 94. They also argued that the execu-

'tors were entitled to commissions, and discussed the cases cited by the Court.

*John D. Stiles & Son, contra,* cited Raudenbach's Appeal, 87 Pa., 51; Hofius vs. Hofius, 92 Pa., 305; Sauter's Estate, 6 W. N. C., 95.

The Supreme Court affirmed the decree of the Orphans' Court on March 14th, 1881, in the following opinion,

Per Curiam:

We entirely concur with the learned President of the Court below and affirm this decree upon his opinion. `

Decree affirmed and appeal dismissed at the costs of the appellant.